**U.S.C.A No. 24-577**
**U.S.D.C. No. 4:23-cr-00093-BLW**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| **United States of America,** | **)** |
| | **)** |
| **Plaintiff/Appellee,** | **)** |
| | **)** |
| **vs.** | **)** |
| | **)** |
| **Lawrence Osborn,** | **)** |
| | **)** |
| **Defendant/Appellant.** | **)** |
| | **)** |

Appeal from the United States District Court
For the District of Idaho
The Honorable B. Lynn Winmill, District Court Judge

**Reply Brief of Defendant-Appellant**

Samuel Macomber
Federal Defender Services of Idaho
702 West Idaho Street, Suite 1000
Boise, Idaho 83702
Telephone: (208) 331-5500
Attorney for Defendant-Appellant
Lawrence Osborn

# **Table of Contents**

Introduction ............................................................................................. 1

Argument ................................................................................................. 2

   I.   Mr. Osborn prevails under any standard of review. ...................... 2

   II.  The district court erred by considering the seriousness of Mr.
       Osborn's offense when imposing supervised release. ..................... 5

      a.   "Nature" of offense versus "seriousness" of offense. ..................... 5

      b.   Danger. ............................................................................... 6

      c.   *Wilcher* analogy. ............................................................... 7

      d.   Statutory framework. ...................................................... 8

      e.   Guideline sentence. ......................................................... 9

      f.   Typical sentence lengths. .............................................. 10

      g.   Record quotations. ........................................................ 12

   III. The district court erred by failing to explain its sentence and
       address Mr. Osborn's mitigating arguments. .............................. 13

      a.   Thin record. .................................................................... 13

      b.   Reject versus ignore. ...................................................... 14

      c.   Carceral versus supervision. ......................................... 14

Conclusion ............................................................................................. 15

Statement of Related Cases ................................................................ 16

Certificate of Compliance ................................................................... 17

Certificate of Service .......................................................................... 18

# Table of Authorities

**Cases**

*Foucha v. Louisiana*,
   504 U.S. 71 (1992) ................................................................. 4

*Molina-Martinez v. United States*,
   136 S. Ct. 1338 (2016) ........................................................ 3

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) ............................................ 4

*Rabkin v. Oregon Health Scis. Univ.*,
   350 F.3d 967 (9th Cir. 2003) .............................................. 3

*Rosales-Mireles v. United States*,
   138 S. Ct. 1897 (2018) ..................................................... 3, 4

*Tapia v. United States*,
   564 U.S. 319 (2011) ............................................................. 6

*United States v. Brady*,
   895 F.2d 538 (9th Cir. 1990) ............................................ 11

*United States v. Carty*,
   520 F.3d 984 (9th Cir. 2008) ............................................ 13

*United States v. Casner*,
   Case No. 1:23-cr-00038-AKB (D. Idaho Dec. 13, 2023) ..................... 10

*United States v. Cope*,
   527 F.3d 944 (9th Cir. 2008) ............................................ 15

*United States v. Daniels*,
   541 F.3d 915 (9th Cir. 2008) ............................................ 11

*United States v. Garcia*,
   491 F. App'x 815 (9th Cir. 2012) ...................................... 13

*United States v. Hammons*,
   558 F.3d 1100 (9th Cir. 2009) ............................................ 4

*United States v. Hernandez-Becerra*,
   636 F. App'x 943 (9th Cir. 2016) ........................................ 3

*United States v. James Cory Koyle*,
   Case No. 1:19-cr-00128-BLW (D. Idaho Nov. 7, 2019) ..................... 10

*United States v. Jaycox*,
   962 F.3d 1066 (9th Cir. 2020) ............................................. 2

*United States v. Johnson,*
    529 U.S. 53 (2000) ................................................................. 9
*United States v. Martinez,*
    Case No. 1:23-cr-00158-BLW (D. Idaho Dec. 20, 2023) ..................... 10
*United States v. Tapia,*
    665 F.3d 1059 (9th Cir. 2011) ............................................. 4
*United States v. Tercero,*
    640 F.2d 190 (9th Cir. 1980) .............................................. 3
*United States v. Vincent Paul Ingolia,*
    Case No. 1:18-cr-00248-BLW (D. Idaho July 10, 2019) ..................... 10
*United States v. Wilcher,*
    91 F.4th 864 (7th Cir. 2024) ....................................... 7, 8, 13
*United States v. Williams,*
    636 F.3d 1229 (9th Cir. 2011) ............................................ 11

## Statutes

18 U.S.C. § 3553(a)(1) .............................................................. 5
18 U.S.C. § 3553(a)(2)(A) ........................................................... 5

## Rules

Federal Rule of Criminal Procedure 51 ..................................... 2

## Other Authorities

Bryan Garner, *The Winning Brief* 494 (2014); Mark Herrmann, *The
    Curmudgeon's Guide to Practicing Law* 8 (2006) ................................ 13

# **Introduction**

Mr. Lawrence Osborn is a reasonable man. He does not contest his carceral sentence; he committed a crime and accepted his punishment. But defendants like Mr. Osborn retain procedural rights. Here, the district court procedurally erred when it doubled Mr. Osborn's requested supervised release after impermissibly considering the seriousness of his offense and failing to provide an adequate explanation.

The government's arguments do not hold water. For example, the government highlights Mr. Osborn's offense conduct, danger to the community, and long sentences for child pornography. But seriousness is not a permissible consideration for supervised release, Mr. Osborn poses a low risk to reoffend, and he did not commit a child pornography offense. These arguments distract from the true issue in this case—the district court's procedural error.

## **Argument**

### **I.  Mr. Osborn prevails under any standard of review.**

The government is correct that Mr. Osborn did not explicitly object to the district court's procedural error. AB-6.[1]

But abuse of discretion review still applies. Federal Rule of Criminal Procedure 51 governs the preservation of errors. Rule 51(a) applies when an error is created by the ruling itself. A party need not take "exception" to one of these errors, which means that a party need not complain about the ruling after it has been made. Mr. Osborn's procedural error arguments are covered by Rule 51(a) and thus did not require additional objection beyond Mr. Osborn's argument itself—that he should receive five years of supervised release and the mitigating factors that accompanied that request. ER-28-30. Importantly, the case the government cites to justify plain error review actually applies abuse of discretion review to the defendant's procedural error argument. AB-6; *United States v. Jaycox*, 962 F.3d 1066, 1071 (9th Cir. 2020) ("The district court did not abuse its discretion in not giving definitive weight

---

[1] "AB" refers to the government's answering brief. "OB" refers to Mr. Osborn's opening brief.

to [defendant's] regional data in determining the appropriate sentence.").

Even under plain error review, this Court should reverse. The two standards are similar: "An abuse of discretion is a plain error." *United States v. Hernandez-Becerra*, 636 F. App'x 943, 945 (9th Cir. 2016) (quoting *Rabkin v. Oregon Health Scis. Univ.*, 350 F.3d 967, 977 (9th Cir. 2003)); *see also United States v. Tercero*, 640 F.2d 190, 197 (9th Cir. 1980) (same).

As applied to sentencing errors, the four prongs of plain-error review are: (1) "there must be an error that has not been intentionally relinquished or abandoned"; (2) "the error must be plain—that is to say, clear or obvious"; (3) "the error must have affected the defendant's substantial rights"; and (4) "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904-05 (2018) (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016)).

Here, Mr. Osborn's procedural error arguments satisfy the four prongs of plain error review. The district court erred by considering an

impermissible sentencing factor and inadequately explaining the sentence length.

*First*, Mr. Osborn did not "abandon" the issue because his supervised release sentence length was a central subject of the sentencing proceeding. ER-28-30; *Rosales-Mireles*, 138 S. Ct. at 1904. *Second*, the district court plainly erred by considering a statutorily impermissible sentencing factor and failing to explain its discretionary sentence-length decision—as one Ninth Circuit panel quipped, "[w]e can't defer to reasoning that we can't review." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008). *Third*, the error affected Mr. Osborn's supervised release—a liberty interest that is certainly a substantial right. *See Foucha v. Louisiana*, 504 U.S. 71, 86 (1992) ("Freedom from physical restraint [is] a fundamental right."). And *fourth*, the error seriously affected the fairness of the judicial proceeding because procedural errors affect fairness. *United States v. Tapia*, 665 F.3d 1059, 1060 (9th Cir. 2011) (finding procedural error was plain error); *United States v. Hammons*, 558 F.3d 1100, 1105 (9th Cir. 2009) (same).

## II.    The district court erred by considering the seriousness of Mr. Osborn's offense when imposing supervised release.

Mr. Osborn responds to several of the government's arguments, each in turn.

### a. "Nature" of offense versus "seriousness" of offense.

The government argues that the district court's "reference to the 'troubling *nature* of those communications' thus speaks to the nature of the offense, not its seriousness." AB-10 (quoting the district court at ER-38) (emphasis in the government's brief). This appears to be the key distinction between the government and Mr. Osborn—whether the district court's statement went to *nature* or *seriousness*, to 18 U.S.C. § 3553(a)(1) or § 3553(a)(2)(A).

Here, the government's attempted classification is incorrect because section (a)(1) concerns the elements of the charges and the offensive conduct, whereas section (a)(2)(A) concerns the aggravating factors of the specific conduct. Mr. Osborn satisfied the elements of the charges when he attempted to entice a minor. SD-107-111. The district court's statement went beyond the elements and concerned the "seriousness of the offense" because it addressed the "troubling" content

of Mr. Osborn's messages—the "trouble" was not merely that Mr. Osborn committed the offense, the trouble was that Mr. Osborn's messages were graphic and off-putting. This goes to seriousness. In other words, the district court's concern was not merely that Mr. Osborn committed the charged offense but that he satisfied the elements in a troubling way.

The government's reliance on the word "nature" does not save its argument because, in the district court's statement, "nature" modifies "communications." ER-39. The troubling contents of the communications make the offense serious, but they do not change the nature of the enticement offenses. Because the district court considered the seriousness of the offense, not merely whether it satisfied the elements, the district court considered retributive punishment and thus procedurally erred. *See Tapia v. United States*, 564 U.S. 319, 326 (2011) ("[A] court may *not* take account of retribution (the first purpose listed in § 3553(a)(2)) when imposing a term of supervised release.").

### b. Danger.

The government argues that "[g]iven the "horrific" nature of the offense and the palpable danger to the most vulnerable members of the

community, the district court's concern was well-founded." AB-11. The district court, however, did not address danger. It only addressed the "troubling nature" of Mr. Osborn's communications. ER-39.

And Mr. Osborn is not a particular danger. He was evaluated as a low risk to reoffend, and his conditions of supervision include sex offender treatment. OB-17-18; SD-120; ER-7. U.S. Probation gave him unusually high praise for his rehabilitative efforts and positive adjustment to incarceration while on pretrial detention. SD-106. Five years of supervision is a sufficient time to provide treatment and decrease any community risk for someone with his low risk. An additional five years of supervision (for a ten-year term) is not necessary because "[n]othing is ever 'only' five years—particularly not a restriction on someone's liberty." *United States v. Wilcher*, 91 F.4th 864, 874 (7th Cir. 2024).

### c. *Wilcher* analogy.

The government claims that "[t]he district court's language here also distinguishes the present circumstances from those in *United States v. Wilcher*." AB-10 n.2. This is an unsuccessful attempt to distinguish a core analogy in Mr. Osborn's argument. *See* OB-2, 18-19.

The use of the word "nature" does not distinguish the two cases. Both courts offered one-sentence explanations for increased supervised release. The *Wilcher* court noted "[t]he seriousness of this offense is evident." 91 F.4th 869. The district court here noted "I think ten years is the appropriate length of time given, as I have suggested, what is reflected by these communications and the troubling nature of those communications." ER-38-39. "Seriousness" is similar to "troubling." While the district court in Mr. Osborn's case did not say "seriousness" explicitly, its justification points toward seriousness and is thus impermissible.

### d. Statutory framework.

The government contends that "the Defendant misunderstands the statutory framework and insists that the district court may only consider rehabilitative purposes when imposing supervised release." AB-11. Not so.

Mr. Osborn noted all the other permissible factors a sentencing court can consider for supervised release. OB-15 (quoting 18 U.S.C. § 3583(c)). Mr. Osborn responded to those permissible considerations. *See*, *e.g.*, OB-17 ("The district court's comments about 'troubling'

communications were not about protecting the public."). In short, Mr. Osborn laid out the correct legal standard and applied it appropriately.

The point of Mr. Osborn's rehabilitation argument was to note the *purpose* of supervised release, and not to argue that rehabilitation is the only consideration during sentencing. *United States v. Johnson*, 529 U.S. 53, 59 (2000) ("Supervised release fulfills rehabilitative ends, distinct from those served by incarceration."). Quoting binding Supreme Court precedent is not a misunderstanding of the statutory framework. Here, the district court did not consider rehabilitation at all when imposing supervised release. It considered only "the troubling nature of those communications." ER-39.

### e. Guideline sentence.

The government notes that Mr. Osborn's sentence "was well within its discretion to impose a ten-year term of supervised release." AB-7. This is irrelevant—a guideline violation is not Mr. Osborn's argument. His argument is about procedural error for impermissibly considering the seriousness of the offense, an argument the government does not effectively refute.

### f. Typical sentence lengths.

The government claims a "ubiquity of lifetime terms of supervision for child-exploitation crimes in this Court." AB-11 n.3. This argument is both false and misleading.

It is false because defendants in the district of Idaho often receive non-lifetime supervised release sentences for attempted coercion and enticement. In these two recent cases, defendants received five years of supervised release for attempted coercion and enticement (the same offense as Mr. Osborn): *United States v. James Cory Koyle*, Case No. 1:19-cr-00128-BLW, Dkt. No. 22 (D. Idaho Nov. 7, 2019); *United States v. Vincent Paul Ingolia*, Case No. 1:18-cr-00248-BLW, Dkt. No. 35 (D. Idaho July 10, 2019). Additional examples abound.[2]

The government's argument is misleading because it shows only that the government lumps sex offenders into a categorical bucket of severe punishment rather than following the court's mandate to consider each defendant as an individual. *United States v. Brady*, 895

---

[2] *See, e.g., United States v. Martinez*, Case No. 1:23-cr-00158-BLW, Dkt. 39 (D. Idaho Dec. 20, 2023) (ten years supervised release for enticement); *United States v. Casner*, Case No. 1:23-cr-00038-AKB, Dkt. 47 (D. Idaho Dec. 13, 2023) (same).

F.2d 538, 541 (9th Cir. 1990) ("[A] criminal sentence must reflect an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime.").

The government's generalizing includes citations to two child pornography cases that are over a decade old, even though Mr. Osborn was not convicted of a child pornography offense and had no illicit images on any of his devices. AB-11 n.3; *United States v. Daniels*, 541 F.3d 915, 922 (9th Cir. 2008) (possession of child pornography); *United States v. Williams*, 636 F.3d 1229, 1233-34 (9th Cir. 2011) (receipt of child pornography); SD-107-111. Again, Mr. Osborn possessed zero illicit images—these two citations do not show "ubiquity" in lifetime terms of supervision for enticement defendants like Mr. Osborn, they show that the government considers sentences at an inappropriately broad level of generality. AB-11 n.3.

The government also claims, in the same footnote, that "amongst all circuit courts of appeals, 99.1% of defendants convicted of child pornography offenses receive supervised release with a mean term of 190 months of supervised release." AB-11 n.3. This argument is again

misleading because Mr. Osborn was not convicted of a child pornography case

Mr. Osborn accepted responsibility for attempted coercion and enticement. ER-3. This falls into a different statistical category of offense from child pornography, the category the government cites. In the cited Sentencing Commission chart, the mean length of supervised release for "Obscenity/Other Sex Offenses" (the correct statistical category for Mr. Osborn) is 74 months and the median is 60 months—the same number that Mr. Osborn requested. In other words, Mr. Osborn requested the median length supervised release among his category of defendants after citing multiple mitigating factors that justified his supervised release request. ER-28-30.

### g. Record quotations.

The government claims that "throughout the Defendant's Opening Brief, he cites to only a portion the district court's statement." AB-10. Not true.

Mr. Osborn and the government quote in full the *exact same paragraph* of the district court's statement. OB-10; AB-5. The only thing Mr. Osborn's quotes "tell" is his brief follows legal writing standards—

block quotes should be used sparingly, and selective quotations are preferred. *See* Bryan Garner, *The Winning Brief* 494 (2014); Mark Herrmann, *The Curmudgeon's Guide to Practicing Law* 8 (2006). Mr. Osborn quotes the district court's statement in full for transparency then quotes the most relevant portion for readability, not for deception.

### III. The district court erred by failing to explain its sentence and address Mr. Osborn's mitigating arguments.

Mr. Osborn again responds to several of the government's arguments, each in turn.

### a. Thin record.

In his opening brief, Mr. Osborn argued that this case was similar to *United States v. Wilcher* in that the "record is too thin for meaningful review." OB-23 (quoting 91 F.4th at 875). The government does not respond to this argument regarding the record's frailty. In doing so, the government implicitly concedes its truth.[3] As it must, because the district court's cursory explanation provided insufficient record for *why* a five-year supervision sentence was inadequate. ER-38-39. *United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008) (holding that once a

---

[3] The government also failed to address Mr. Osborn's analogy to *United States v. Garcia*, 491 F. App'x 815, 817 (9th Cir. 2012). OB-24.

district court selects a sentence it "must explain [the sentence] sufficiently to permit meaningful appellate review").

The district court's omission of explanation was especially poignant after Mr. Osborn's extended sentencing argument for supervision leniency—Mr. Osborn listed nine mitigating factors that supported a shorter term of supervised release. ER-28-30.

### b. Reject versus ignore.

The government instead argues that the district court "committed no procedural error in rejecting defense counsel's argument that the mandatory minimum was sufficient." AB-5-6. But the district court did not reject Mr. Osborn's arguments; instead, it completely ignored them. ER-38-39.

### c. Carceral versus supervision.

The government argues that the district court "satisfied [the requirement to explain a sentence] by explaining its sentencing decision in relation to the relevant 18 U.S.C. § 3553 factors." AB-13.

This conclusory statement is accurate for the *carceral* portion of Mr. Osborn's sentence. ER-33-36. Is it inaccurate for the *supervision* portion of Mr. Osborn's sentence. ER-38-39. There, the district court

noted only, "I do feel that five years is simply not adequate" and that "ten years is the appropriate length of time given . . . what is reflected by these communications and the troubling nature of those communications." ER-38-39. This explanation, given separately from the explanation for the carceral sentence, is inadequate for appellate review.

Supervision is part of a sentence. *United States v. Cope*, 527 F.3d 944, 950 (9th Cir. 2008) ("The length of [a defendant's] term of supervised release is part of his 'sentence,' and is not a condition of his supervised release."). The district court should have explained its supervision sentence, or at least tied the supervision explanation to its carceral explanation in a permissible way. *See supra* Part II.

## Conclusion

Mr. Lawrence Osborn respectfully requests this Court find procedural error during sentencing—regarding the imposition of supervised release—and remand his case for resentencing.

/s/ Samuel Macomber
Samuel Macomber
Assistant Federal Defender
Federal Defender Services of Idaho
Attorney for Defendant-Appellant
Lawrene Osborn

## <u>Statement of Related Cases</u>

Counsel for Defendant-Appellant LAWRENCE OSBORN is not aware of any related cases currently pending in this Court.

## <u>Certificate of Compliance</u>

I am the attorney.  **This brief contains 2582 words**, excluding the items exempted by Fed. R. App. P. 32(f).  The brief's type size and typeface comply with Fed. R. App. 32(a)(5) and (6).

I certify that this brief (*select only one*):

[X]   complies with the word limit of Cir. R. 32.1.

[ ]   is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ]   is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ]   is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ]   complies with the longer length limit permitted by Cir. R. 32-2(b) because (*select only one*):

    [ ]   it is a joint brief submitted by separately represented parties;

    [ ]   a party or parties are filing a single brief in response to multiple briefs; or

    [ ]   a party or parties are filing a single brief in response to a longer joint brief.

[ ]   complies with the length limit designated by court order dated _____.

[ ]   is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Dated:  September 18, 2024     /s/ Samuel Macomber
                                      Samuel Macomber
                                      Assistant Federal Defender
                                      Federal Defender Services of Idaho
                                        Attorneys for Defendant Appellant
                                        LAWRENCE OSBORN

## **Certificate of Service**

I hereby certify that I electronically filed the foregoing Defendant-Appellant's REPLY BRIEF with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 18, 2024. I certify that appellee in this case is a registered CM/ECF user and that service will be accomplished by the appellate CM/ECF system.

Dated: September 18, 2024       /s/ Joy Fish
                                    Joy Fish